DELTA STEAMSHIP LINES, INC.

v.

The UNITED STATES.

No. 226–75.

United States Court of Claims.

Oct. 20, 1976.

Daniel M. Gribbon, Washington, D.C., attorney of record, for plaintiff. Harris Weinstein, David F. P. O'Connor and Covington & Burling, Washington, D.C., of counsel.

Fenton P. Wilkinson, Washington, D.C., with whom was Asst. Atty. Gen. Scott P. Crampton, Washington, D.C., for defendant. Theodore D. Peyser and Robert S. Watkins, Washington, D.C., of counsel.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZlG and BENNETT, Judges, en banc.

ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

KASHIWA, Judge:

This is a tax refund action involving the investment tax credit provisions of the Internal Revenue Code of 1954, § 38 and §§ 46–48.[1] The case is before the court on plaintiff's motion for summary judgment and defendant's cross motion for partial summary judgment. For the reasons stated below, we hold for the plaintiff.

During its short taxable year ended May 1, 1968, plaintiff acquired and placed in service the *SS Delta Argentina*. This vessel is a type of business property to which the investment credit applies. By virtue of the limitations imposed by § 46(a)(2), none of the credit arising on plaintiff's acquisition of the *SS Delta Argentina* could be used in determining plaintiff's federal income tax liability for the short taxable year; and the part of the credit that could not be so used became available as an investment credit carryback to plaintiff's preceding taxable year, the calendar year 1967.

Plaintiff has been engaged in the business of common carriage by water in foreign commerce since its incorporation in 1919. Its vessels, which all bear United States registry, carry freight and mail in regular service between United States ports on the Gulf of Mexico and foreign ports in the Caribbean, South America, and West Africa.

During the years in issue § 607(b) of the Merchant Marine Act of 1936, 46 U.S.C. § 1177(b) (1964), required vessel owners, such as plaintiff, which received operating-differential subsidies,[2] to maintain a "capital reserve fund." Each year plaintiff was required to place in this reserve fund an amount equal to the depreciation, if earned, on all its ships in subsidized service, together with any profits realized from disposition of any ships and such other amounts as Maritime determined were necessary for the ultimate replacement of such vessels. For the duration of the contract term, the funds in this reserve could be used only to pay when due the principal of mortgages on subsidized vessels, to purchase additional vessels, to replace vessels in service, or to reconstruct vessels. Section 607(h) of the Merchant Marine Act of 1936, 46 U.S.C. § 1177(h) (1964), provides that earnings which are so "deposited in the contractor's reserve funds * * * shall be exempt from all Federal taxes."

The vessel here in question was constructed pursuant to the construction-differential subsidy provisions of the Merchant Marine Act of 1936, as amended, 46 U.S.C. §§ 1151 through 1161 (1964). Pursuant to these provisions, the Government pays such portion of the vessel's cost as equals the difference between the lowest bid on the vessel by a domestic shipyard and the fair and reasonable estimate of the cost of constructing the vessel abroad. *Cf. Lykes Bros. Steamship Co. v. United States,* 513 F.2d 1342, 206 Ct.Cl. 354 (1975). The investment credit in issue here relates only to the portion of the cost of the vessel paid by plaintiff.

To settle a dispute that involved the taxation of deposits made in reserve during World War II, when all vessels subject to operating-differential subsidy contracts were operated by and for the account of the United States, plaintiff executed a closing àgreement on April 21, 1947, which was approved by the Treasury Department on

---

1. All section references are to the Internal Revenue Code of 1954 unless otherwise noted.

2. Since December 31, 1937, plaintiff has been party to a succession of operating-differential subsidy contracts with the United States Maritime Commission (now Maritime Administration) (hereafter Maritime), entered into pursuant to §§ 601 through 613 of the Merchant Marine Act of 1936, as amended, 46 U.S.C.

§§ 1171–1183 (1964). The contract covering the year here in question was executed on September 26, 1957, to cover a 20-year period, commencing on January 1, 1958, and extending through December 31, 1977. This is the same form of agreement as entered into by the plaintiff in *States S. S. Co. v. United States,* 428 F.2d 832, 192 Ct.Cl. 795 (1970).

July 16, 1947.[3] The closing agreement compromised the dispute by dividing the reserve deposits into several categories and by providing for distinct tax treatment of each. In this case the position of the Commissioner of Internal Revenue (Commissioner) rests on the part of the closing agreement that denominates all earnings deposited in reserves after the first subsidized voyage in 1946 as "tax-deferred." Such earnings were not subject to federal income tax when deposited in reserve, but they would "not * * * be recognized in the determination of cost basis or invested capital" so long as they remained in reserve or were applied toward the repair or purchase of a vessel. Since the closing agreement provided that the "[d]epreciation on vessels, to the extent based on cost shall be computed on the cost basis herein provided * * *," the depreciation deduction allowable to plaintiff is reduced to the extent that it purchases vessels with such "tax-deferred" funds. Concomitantly, the Commissioner contends that the investment credit does not extend to that portion of the vessel acquired with tax deferred funds because no depreciation is allowable thereon under the closing agreement.

On April 8, 1968, plaintiff acquired and placed in service the SS *Delta Argentina*. The total purchase price was $10,847,205.80. Of that sum, $5,705,535.18 was advanced by the Government under the construction-differential provisions of the Merchant Marine Act. Plaintiff paid the balance of $5,141,670.62, of which $1,874,158.44 was obtained from plaintiff's capital reserve fund.

On its federal income tax return for its short taxable year ended May 1, 1968, plaintiff claimed investment credit earned of $359,916.94, which amount is 7 per cent of the $5,141,670.62 that plaintiff provided in purchasing the vessel. Because limitations imposed by § 46(a)(2) precluded application of this credit against plaintiff's tax liability

for this short taxable year, the entire sum became available for carryback and carryover in accordance with § 46(b)(1). In accordance with § 46(b)(1), plaintiff carried the unused investment credit back to each of its three preceding taxable years, the calendar years 1965, 1966, and 1967. Due to § 46(a)(2) and § 46(b)(2), plaintiff's carrybacks to 1965, 1966, and 1967 were limited to $150,161.24, $58,593.95, and $37,227.06, respectively. All of the carrybacks for 1965 and 1966 were allowed and accordingly are not in dispute.

On its federal income tax return for the calendar year 1967,[4] plaintiff claimed an investment credit in the amount of $39,675.66, consisting of $2,448.60 credit with respect to investments made during the calendar year 1967 (none of which are in dispute), and an investment credit carryback from its short taxable year ended May 1, 1968, of $37,227.06. The District Director of Internal Revenue, New Orleans, Louisiana, denied that part of plaintiff's claimed carryback which was based on plaintiff's application to its share of the purchase price of the $1,874,158.44 in reserve funds. This resulted in a disallowance of $26,729.60 of plaintiff's claimed carryback of $37,227.06 to 1967.

On June 14, 1974, plaintiff filed a timely claim for refund of federal income taxes for the calendar year 1967 in the aggregate amount of $26,729.60, plus interest, disputing, *inter alia*, the disallowance of investment credit as to that portion of plaintiff's cost of the vessel paid from its reserve funds. More than six months having passed without action on this claim, plaintiff timely filed its petition in this court on July 3, 1975. Thereafter, on July 11, 1975, plaintiff's claim for refund was denied in full by a statutory notice of disallowance. The reason given was:

It is determined that investment credit is available only on that part of the ship's

---

**3.** All companies then subject to operating-differential contracts executed substantially similar closing agreements. Maritime has required all subsequent applicants for operating-differential subsidies to execute like agreements.

**4.** Because plaintiff's 1967 return was filed on June 14, 1968, it was able to compute its investment credit carryback from its short taxable year ended May 1, 1968, and to include that sum in its 1967 return.

cost which is used for depreciation purposes. Investment credit is not allowable on the cost of the ship which is from funds withdrawn from your tax deferred capital construction fund.[5]

The issue involved here is the same as the principal one in *Pacific Far East Line, Inc. v. United States*, No. 214–70, Ct.Cl., 544 F.2d 478, a companion case argued at the same time as the instant case. We refer the reader to our opinion in that case, published this same date. The issue is whether that portion of the cost of a ship paid from reserve funds, deposits in which were not subject to tax, is qualified for the investment tax credit.[6] For the reasons stated in *Pacific Far East Line, Inc.*, we hold for the plaintiff.

### CONCLUSION

For the reasons above, defendant's motion for partial summary judgment is denied, plaintiff's motion for summary judgment is granted, and the amount of recovery is to be determined pursuant to Rule 131(c).

COWEN, Chief Judge (dissenting):

I dissent in this case for the reasons stated in my dissenting opinion in *Pacific Far East Line, Inc. v. United States*, No. 214–70, Ct.Cl., 544 F.2d 478, decided today by the court, and I adopt my dissenting opinion as my dissent in this case.

SKELTON, Judge (dissenting):

I dissent in this case for the same reasons stated in my dissenting opinion in *Pacific Far East Line, Inc. v. United States*, No. 214–70, Ct.Cl., 544 F.2d 478, this day decided by this court, and I refer to and adopt that dissenting opinion as my dissent in this case.

I would allow defendant's motion for summary judgment, and deny that of the plaintiff and dismiss plaintiff's petition.

---

**5.** This statement reflects the position taken by the Internal Revenue Service in Rev. Rul. 67–395, 1967–2 Cum. Bull. 11, and Rev. Rul. 68–468, 1968–2 Cum. Bull. 26.

**6.** Since no mortgage payment is involved in the instant case, the other issue in the companion case involving mortgage payments is not applicable.